IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Capital Resorts Group, LLC, *a Delaware limited liability company doing business as Capital Vacations*, | ) ) ) ) | Case No. 4:24-cv-03043-JDA |
| Plaintiff, | ) ) ) | **OPINION AND ORDER** |
| v. | ) ) | |
| Wesley Financial Group, LLC, *a Tennessee limited liability company*; Charles William McDowell, III, | ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the Court on Defendants' motion to dismiss, Plaintiff's motion for leave to conduct limited personal jurisdiction discovery and for extension of time, Defendants' motion to stay the entry of a scheduling order and discovery, and Plaintiff's motion for issuance of a scheduling order. [Docs. 17; 25; 30; 31.] The motions have been fully briefed [Docs. 27; 28; 29; 32; 33] and are ripe for review.

## BACKGROUND[1]

Capital Resorts Group, LLC d/b/a Capital Vacations ("Capital Vacations") is headquartered in Myrtle Beach, South Carolina, and markets, sells, and/or manages more than 200 vacation destinations throughout the world, including over 12 resorts in South Carolina and over 12 resorts in North Carolina. [Doc. 1 ¶ 1.] Capital Vacations' customers book their vacations by using points sold by Capital Vacations and its affiliates. [*Id*.] Defendant Wesley Financial Group, LLC ("Wesley") is a business whose alleged

---

[1] The facts included in this Background section are taken directly from the Complaint. [Doc. 1.]

"sole purpose is to cancel another business's existing contracts." [*Id*. ¶ 2.] Wesley is a Tennessee limited liability company with its primary place of business in Franklin, Tennessee. [*Id*. ¶ 24.] Wesley's CEO, Defendant Charles McDowell, III ("McDowell"), is the sole member of Wesley and resides and is domiciled in Tennessee. [*Id*.]

Capital Vacations alleges that "McDowell touts himself as a pioneer in the timeshare exit industry who has 'fought and won' for timeshare owners in federal court" but that "the promises he makes on behalf of Wesley are either false, meaningless, or both, and in the end the customer is left in a worse position than had they not contracted with Wesley." [*Id*. ¶ 3.] Capital Vacations further alleges that "Wesley uses false advertising to lure potential customers, and then it engages in a slew of deceptive and unfair practices, harming the customers and the timeshare companies, including [Capital Vacations]." [*Id*. ¶ 9.] For most timeshare owners who have a mortgage or owe a balance on their timeshare, nonpayment is the path to cancellation, and Wesley tells the timeshare owners whatever is necessary to induce nonpayment, including at one time promising credit repair and other credit-related services in violation of state and federal laws. [*Id*. ¶ 10.] For timeshare owners who do not have a mortgage, Wesley has the timeshare owner request voluntary relinquishment of the timeshare through Capital Vacations' voluntary relinquishment program, something the customer could do without Wesley and without paying Wesley thousands of dollars. [*Id*. ¶ 11.] "Central to Wesley's business model is that its customers must pretend, under threat of forfeiture of exorbitant fees already paid to Wesley often years before, that the customer is not working with Wesley." [*Id*. ¶ 13.] Wesley demands that its customers never disclose that the emails, letters, and

other communications sent by the timeshare owners to the timeshare companies and other third parties are all drafted by Wesley. [*Id*. ¶ 14.]

Based on these and additional allegations, Capital Vacations filed this action alleging violations of the South Carolina Unfair Trade Practices Act ("SCUTPA") and violations of the North Carolina Timeshare Act. [*Id*. ¶¶ 64–116.] Capital Vacations seeks injunctive relief, damages, and attorneys' fees and costs. [*Id*. at 42.]

## APPLICABLE LAW

### Rule 12(b)(2) Standard

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a claim should be dismissed when the court lacks personal jurisdiction over the defendant. Personal jurisdiction in federal courts is typically determined by whether the defendant would be "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). In determining whether South Carolina state law would authorize personal jurisdiction over defendants, the Court properly examines both the state long arm statute and the due process requirements of the Fourteenth Amendment. *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

South Carolina's long arm statute provides

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's:
>
> > (1) transacting any business in this State;
> >
> > (2) contracting to supply services or things in the State;
> >
> > (3) commission of a tortious act in whole or in part in this State;

3

(4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State;

(5) having an interest in, using, or possessing real property in this State;

(6) contracting to insure any person, property, or risk located within this State at the time of contracting;

(7) entry into a contract to be performed in whole or in part by either party in this State; or

(8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803. "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Grp.*, 126 F.3d at 623. Therefore, the appropriate question for the Court in considering a personal jurisdiction defense raised by an out-of-state defendant is whether that defendant has "established minimum contacts with [South Carolina] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (alteration in original) (internal quotation marks omitted).

Personal jurisdiction may arise through specific jurisdiction, based on the conduct alleged in the suit, or through general jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). To determine whether specific jurisdiction exists, courts should examine "(1) the extent to which the defendant

4

'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Id.* at 712 (alteration in original).  If the defendant's contacts with the state are not the basis of the suit, then general jurisdiction must come from more persistent, unrelated contacts with the state; "the defendant's activities in the [s]tate must have been continuous and systematic." *Id.* (internal quotation marks omitted).  Stated differently, the defendant's actions must be "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945).

A plaintiff has the burden of proving that a court has personal jurisdiction over a defendant.  *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997).  If a court does not hold an evidentiary hearing, a plaintiff need only make a prima facie showing of personal jurisdiction.  *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).  In considering whether a plaintiff has met this burden, the Court draws all reasonable inferences arising from the proof in a plaintiff's favor and resolves all factual disputes to the benefit of the plaintiff.  *Id.*  Both sides may present proof on the issue.  *See id.* at 62.

**Rule 12(b)(6) Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted.  When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  Even so, the court "need not accept the legal

conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice, and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

6

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## DISCUSSION

**Personal Jurisdiction**[2]

Defendants challenge this Court's personal jurisdiction over them. [Doc. 17 at 10–15.] Specifically, Defendants contend that this Court lacks personal jurisdiction over McDowell altogether and that the Court cannot exercise personal jurisdiction over either Defendant for the alleged violations of the North Carolina Timeshare Act. [*Id.*] The Court first addresses personal jurisdiction with respect to McDowell.

---

[2] The Court begins by addressing personal jurisdiction because "[g]enerally, courts must evaluate a motion to dismiss for lack of . . . jurisdiction prior to considering a motion to dismiss for failure to state a claim." *Terry v. First Merit Nat'l Bank*, 75 F. Supp. 3d 499, 507 (D.D.C. 2014).

***Personal Jurisdiction Over McDowell***

Defendants argue that this Court lacks personal jurisdiction over McDowell because he has not purposefully availed himself of the privilege of conducting activities in South Carolina and because the "fiduciary shield" doctrine precludes the Court from exercising personal jurisdiction over McDowell because any actions taken by him as the CEO of Wesley occurred in Tennessee, and not in South Carolina. [*Id.* at 10–13.] Defendants support their motion with a declaration from McDowell, in which he states:

- he is a resident and citizen of Tennessee and has never been a resident or citizen of South Carolina;

- the only time he has traveled to South Carolina in the past 20 years was a one-night trip with his wife to Charleston in 2020 for personal reasons unrelated to his business;

- he does not maintain an office in South Carolina or conduct business in his individual capacity in South Carolina;

- he has not personally engaged in any significant or long-term business activities in South Carolina;

- he has never owned or leased any property in South Carolina;

- he does not personally advertise or solicit any business services in South Carolina;

- he has never been licensed or registered to do business in South Carolina;

- he has never had a bank account in South Carolina;

- he has never received mail or registered to vote in South Carolina;

- he is not personally a party to any contract related to the allegations in this action that is governed by South Carolina law or requires him to perform contractual duties in South Carolina;

- he is the CEO of Wesley, a Tennessee limited liability company and, although Wesley has customers who reside in South Carolina, it does not operate any offices in South Carolina, own or lease any property in South Carolina, or have any employees who are residents of South Carolina;

- he does not perform any of his duties as Wesley's CEO in South Carolina;

- although he is featured in certain of Wesley's advertisements in his capacity as CEO, Wesley has approximately 240 employees and its own marketing department that makes the day-to-day decisions related to its advertisements, and he does not recall ever directing Wesley to direct any advertisements specifically toward residents in South Carolina;

- all decisions related to the content and distribution of Wesley's advertisements are made at its headquarters in Tennessee;

- he generally does not communicate directly with prospective or active Wesley customers;

- to the best of his knowledge, he has never communicated directly with a Wesley customer who owned a Capital Vacations timeshare;

- and to the best of his knowledge, he has never communicated directly with Capital Vacations or any of its employees regarding any Wesley customer who owned a Capital Vacations timeshare.

[Doc. 17-1.]

In its response in opposition to the motion to dismiss, Capital Vacations contends that McDowell is subject to personal jurisdiction in South Carolina because he is the "guiding spirit" and "central figure" of Wesley, citing cases from this district. [Doc. 28 at 10–14.] Capital Vacations also argues that the fiduciary shield doctrine is inapplicable in South Carolina generally and inapplicable to the claims asserted in this case specifically and, even if the fiduciary shield doctrine were applicable, it does not overcome the guiding spirit and central figure bases for personal jurisdiction. [*Id.* at 14–15.] Finally, Capital Vacations asserts that, to the extent the Court does not deny the motion to dismiss with respect to personal jurisdiction over McDowell, the Court should grant Capital Vacations leave to conduct jurisdictional discovery and to file a supplemental brief in response to the motion to dismiss after it has completed that jurisdictional discovery. [*Id.* at 15–16.]

In reply, Defendants argue that being the owner and CEO of Wesley is not enough to subject McDowell to personal jurisdiction in South Carolina and that the generic allegations against McDowell in this case are not enough to support personal jurisdiction. [Doc. 29 at 2–5.] Defendants again contend that the fiduciary shield doctrine applies. [*Id.* at 5.]

Under South Carolina's long arm statute, "personal jurisdiction of a non-resident individual cannot rest on the mere fact that a person is an officer or employee of a defendant corporation." *Scurmont LLC v. Firehouse Rest. Grp., Inc.*, No. 4:09-cv-00618-RBH, 2010 WL 11433199, at *12 (D.S.C. May 19, 2010). "Instead, what is required is some showing of direct, personal involvement by the corporate officer in some decision or action which is causally related to the plaintiff's injury." *Id.* (cleaned up). "Direct, personal involvement exists when the defendant is the 'guiding spirit' or 'central figure'

behind a challenged corporate activity." *Booze Pops LLC v. Real Est. Flipz, Inc.*, No. 2:20-cv-691-RMG, 2020 WL 3420716, at *6 (D.S.C. June 21, 2020). Applying these principles, cases in this district have concluded that the court had personal jurisdiction over corporate officers who were specifically alleged to have direct, personal involvement in actions that resulted in injury to a plaintiff in South Carolina and such injury in South Carolina was reasonably foreseeable, *Magic Toyota, Inc. v. SE Toyota Distribs., Inc.*, 784 F. Supp. 306, 314–15 (D.S.C. 1992); who were alleged to have directed wrongdoing toward South Carolina or to have committed wrongdoing while physically in South Carolina in addition to allegedly signing a misleading trademark application, *Booze Pops*, 2020 WL 3420716, at *6; and who were alleged to have traveled multiple times per year for 10 years to a company warehouse in South Carolina and conducted meetings with the plaintiff in South Carolina, *Sheppard v. Jacksonville Marine Supply, Inc.*, 877 F. Supp. 260, 265–66 (D.S.C. 1995). On the other hand, cases have also concluded that the court did not have personal jurisdiction over corporate officers who had been featured in articles and videos about the company but had visited South Carolina only once, *Booze Pops*, 2020 WL 3420716, at *7; who were not alleged to have personally had any contacts in South Carolina related to the alleged wrongdoing and were involved only in decisions made outside of South Carolina, *Gault v. Thacher*, 367 F. Supp. 3d 469, 477–81 (D.S.C. 2018) ("Regardless of whether [the officer] was the 'guiding spirit' for some of the [plaintiff's] harms, those harms stem solely from decisions made and actions taken in Georgia."); and who did not negotiate the financial transaction at issue, rarely traveled to South Carolina, and were not specifically alleged to be connected to the plaintiff's causes of action, *Sheppard*, 877 F. Supp. at 266–67.

Having reviewed the allegations and relevant case law, the Court concludes that it does not have personal jurisdiction over McDowell. As an initial matter, Capital Vacations has maintained that "McDowell's sole ownership of [Wesley] and position as CEO, without more, are enough to establish his personal jurisdiction." [Doc. 28 at 12 (internal citation omitted); *see id.* at 16 (arguing that "this Court has already held that ownership and control alone are sufficient to confer personal jurisdiction").] However, as discussed above, that is an incorrect statement of the law. *See Scurmont*, 2010 WL 11433199, at *12. Capital Vacations' theory

> would permit jurisdiction over any high-ranking corporate officer solely based on a corporation's contacts with the forum state. This is precisely what the Fourth Circuit has instructed that district courts cannot do, as the mere fact that a defendant is a corporate officer does not relieve the plaintiff of the responsibility to allege contacts by that defendant specifically directed at the forum state.

*Batts v. SNAP Inc.*, No. 2:23-cv-3565-DCN, 2024 WL 3677802, at *11 (D.S.C. Aug. 6, 2024); *see also Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052, 1064–65 (4th Cir. 1983) ("[I]f the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the [wrongdoing] occurred without the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally by reason of service under the long-arm statute of the forum state.").

Turning to the allegations in the Complaint, Capital Vacations asserts that the "Court may exercise personal jurisdiction over McDowell because he owns, controls, and directs Wesley's business and causes its actions and contacts with South Carolina, its

residents, and its businesses." [Doc. 1 ¶ 29.] It also generally alleges that "all actions attributable to Wesley are also attributable to McDowell, and he is equally responsible and liable to [Capital Vacations]." [*Id.* ¶ 37.] In its response in opposition to the motion to dismiss, Capital Vacations contends that the following specific allegations regarding McDowell support the exercise of personal jurisdiction over him under the guiding spirit principle:

> that he (1) is the "father" of this timeshare exit industry, (2) founded and serves as the CEO of [Wesley], (3) is the sole owner of [Wesley], (4) personally devised Wesley's business model, (5) personally implemented and directed others to implement and execute his business model, (6) stars in a substantial number of [Wesley's] social media, radio, and television advertisements and serves as the face of the company, including a 45-minute biopic that [Wesley] customers are compelled to watch before coming to terms with [Wesley], and (7) directs and controls [Wesley's] activities that are the subject of this lawsuit and controls other employees at [Wesley] that implement his scheme.

[Doc. 28 at 16–17 (citing Doc. 1 ¶¶ 3, 4, 19, 24, 29, 37, 39, 42, 49, 50).] The Court disagrees.

Noticeably missing from these allegations is any assertion that McDowell directed any activity toward South Carolina. That McDowell devised Wesley's business model and then implemented and directed others to implement it does nothing to show that McDowell purposefully availed himself of the privilege of conducting activities in South Carolina. Although Capital Vacations alleges that McDowell stars in a substantial number of Wesley's social media, radio, and television advertisements, his mere appearance in these advertisements is not enough to establish jurisdiction. *See Booze Pops*, 2020 WL 3420716, at *7 (concluding that a corporate officer's being featured in articles or videos about the company coupled with one visit to South Carolina was insufficient to establish

personal jurisdiction over him). Moreover, as stated, McDowell has declared that Wesley "has approximately 240 employees," including "its own marketing department that makes the day-to-day decisions related to [Wesley's] advertisements," and he "do[es] not recall ever directing [Wesley] to air, broadcast or publish any advertisements specifically in South Carolina or directed specifically towards residents of South Carolina." [Doc. 17-1 ¶ 14.] In its response in opposition to the motion to dismiss, Capital Vacations fails to address this argument at all. [*See generally* Doc. 28.] The Court concludes that the allegations in the Complaint do not rise to the level of alleging "purposeful and calculated action" directed toward South Carolina that was "causally related" to Capital Vacations' injuries. *See, e.g.*, *Magic Toyota*, 784 F. Supp. at 315. Instead, what is alleged is a tenuous connection between an out-of-state corporate officer's actions and the forum state, which the Fourth Circuit has indicated would not confer specific jurisdiction. *See Columbia Briargate*, 713 F.2d at 1064–65. As a result, the Court concludes that Capital Vacations has failed to meet its burden of making a prima facie showing of personal jurisdiction over McDowell.[3] Moreover, the Court concludes that the allegations in the

---

[3] Additionally, the Court is not persuaded by the cases Capital Vacations relies on to support its position that the guiding spirit and central figure doctrine supports personal jurisdiction in this case. First, *Springs Industries v. Gasson*, 923 F. Supp. 823 (D.S.C. 1996), is distinguishable because the defendant was a nonresident director of a South Carolina corporation and any decision made on behalf of the corporation was deemed to be made in South Carolina; thus, he was deemed to have transacted business in South Carolina. *Id.* at 827. Second, the Court is not persuaded by *Charleston Equities, Inc. v. Winslett*, No. 3:17-cv-137-JFA, 2017 WL 10504748 (D.S.C. Aug. 8, 2017), because the court conclusorily followed the holding in *Springs Industries* but provided little analysis before finding that two owners of a company were "necessarily" the "guiding spirit[s]" and that was sufficient for jurisdiction. *Id.* at *4. The court also noted that its conclusion was "bolstered by [the defendant's] claim for piercing the corporate veil to hold [the owners] personally liable for any actions taken by [the company]." *Id.*

Complaint are insufficient to warrant jurisdictional discovery.  *See Pandit v. Pandit*, 808 F. App'x 179, 183 (4th Cir. 2020) ("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." (internal quotation marks omitted)).

For these reasons, Capital Vacations' motion for leave to conduct limited personal jurisdiction discovery as to McDowell is denied, and Defendants' motion to dismiss for lack of personal jurisdiction as to McDowell is granted.[4]

### Personal Jurisdiction with Respect to the Claimed Violations of the North Carolina Timeshare Act

Defendants argue that the Court lacks personal jurisdiction over them for alleged violations of a North Carolina statute that applies only to services "provided in North Carolina."  [Doc. 17 at 13–15.]  Defendants explain that in late 2021, North Carolina's legislature passed a broad amendment to the North Carolina Timeshare Act (the "2021 Law"), "becoming the first state in the country to adopt legislation attempting to regulate timeshare exit companies, or timeshare 'transfer service providers.'"  [*Id*. at 7.]  The 2021 Law purported to regulate any timeshare transfer services "offered or provided in [North Carolina] or offered or provided anywhere in connection with a timeshare program containing timeshare units or a timeshare property located in [North Carolina]."  N.C. Gen Stat. Ann. § 93A-41(45) (effective Oct. 6, 2021, to July 11, 2022).  In 2022, however, North Carolina's legislature again amended the North Carolina Timeshare Act (the "2022 Law"), narrowing its reach to apply to services "provided in [North Carolina]."  N.C. Gen. Stat. Ann. § 93A-41(45) (effective July 12, 2022).  Thus, Defendants contend that any

---

[4] Because the Court concludes that it lacks personal jurisdiction over McDowell, the Court declines to address the parties remaining arguments regarding dismissal of McDowell.

alleged violations of this North Carolina statute cannot arise from activities directed at South Carolina because the statute applies only to services provided in North Carolina. [Doc. 17 at 14.]

In its response in opposition to the motion to dismiss, Capital Vacations argues that Defendants are subject to this Court's personal jurisdiction with respect to Capital Vacations' claim for violations of the North Carolina Timeshare Act. [Doc. 28 at 17–19.] First, Capital Vacations contends that Wesley's "contacts with South Carolina are sufficient to render it essentially at home in South Carolina and therefore subject to general personal jurisdiction." [*Id.* at 17.] Next, Capital Vacations argues that it is unclear whether the specific personal jurisdiction analysis must proceed on a claim-specific basis but that, regardless, the Complaint's allegations are sufficient to subject Defendants to specific jurisdiction on the North Carolina Timeshare Act claim. [*Id.* at 17–19.]

In reply, Defendants argue that they are not subject to this Court's general personal jurisdiction and that the alleged violations of a North Carolina statute that applies only within North Carolina cannot give this Court specific personal jurisdiction. [Doc. 29 at 7–10.]

<u>General Jurisdiction</u>

As previously stated, general jurisdiction requires that a nonresident defendant's activities in the state be "continuous and systematic." *ALS Scan*, 293 F.3d at 712 (internal quotation marks omitted). Indeed, a "court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the [s]tate are so 'continuous and systematic' as to render them

essentially at home in the forum [s]tate." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

In this case, Capital Vacations has not alleged Defendants have contacts with South Carolina that are sufficiently continuous and systematic to justify the exercise of general personal jurisdiction. Capital Vacations generally alleges that

> Wesley advertises its services in South Carolina to South Carolina residents, provides timeshare exit services to South Carolina residents, induces breaches of contract between [Capital Vacations], located in South Carolina, and its customers, causes harm that is realized in South Carolina, and the causes of action asserted herein arise from that conduct and contacts with South Carolina.

[Doc. 1 ¶ 29.] The Fourth Circuit has stated,

> Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to general jurisdiction. Even continuous activity of some sorts by a corporation within a state is not enough to support general jurisdiction over the corporation. Only when the continuous corporate operation within a state is thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities may a court assert general jurisdiction over a corporate defendant.

*Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993) (cleaned up). The court also warned that "broad constructions of general jurisdiction should be generally disfavored." *Id.* at 1200. Therefore, in *Nichols*, the court held that the district court in Maryland lacked general jurisdiction even though the defendant employed 13 Maryland residents as representatives and maintained two district managers in Maryland to oversee the representatives, owned company cars registered in Maryland, held district meetings three times annually, had held regional and national meetings twice in Maryland, and had between $9 million and $13 million in annual sales in Maryland. *Id.* at 1198–2000.

17

Wesley's alleged contacts with South Carolina are much more limited than those in *Nichols*, and Capital Vacations has failed to direct the Court to any case law supporting a finding of general jurisdiction based on similar alleged contacts as between Defendants and South Carolina in this case. [*See generally* Doc. 28.] Accordingly, the Court concludes that Capital Vacations has failed to meet its burden of making a prima facie showing of general personal jurisdiction over Defendants. *See Daimler AG v. Bauman*, 571 U.S. 117, 137–38 (2014) (describing as "unacceptably grasping" the idea that a court could exercise "general jurisdiction in every state in which a corporation engages in a substantial, continuous, and systematic course of business" (cleaned up)).

<u>Specific Jurisdiction</u>

As the Eastern District of Virginia has recognized, "controlling Supreme Court and Fourth Circuit cases strongly suggest, but do not definitively hold, that the [specific jurisdiction] analysis must be claim-specific. *Gatekeeper Inc. v. Stratech Sys., Ltd*., 718 F. Supp. 2d 664, 666 (E.D. Va. 2010). In other words, "specific jurisdiction principles require each cause of action to arise from the defendant's contacts with the forum state." *Id.*

It is unclear to the Court how Capital Vacations contends that this Court, in South Carolina, has specific jurisdiction over Defendants based on their alleged activities in North Carolina, in violation of a North Carolina statute, with no connection to South Carolina other than that Capital Vacations is headquartered in South Carolina and realizes its alleged harm in South Carolina. Indeed, in its response in opposition to the motion to dismiss, Capital Vacations details activities that Defendants allegedly engaged in in North Carolina. [Doc. 28 at 18 (arguing that the Complaint alleges that Capital

Vacations has members residing in North Carolina who have worked with and been harmed by Wesley, that Wesley enters into contracts with residents of North Carolina, and that Wesley provides services in North Carolina); *see also id.* (asserting that "Wesley is performing services in North Carolina, triggering the North Carolina statute, and making it subject to this Court's personal jurisdiction").] Because personal jurisdiction in this Court is determined by the extent to which Defendants purposefully availed itself of the privilege of conducting activities in *South Carolina* and whether Capital Vacations' North Carolina Timeshare Act claim arises out of any activities directed at *South Carolina*, *see ALS Scan*, 293 F.3d at 712, Capital Vacations' arguments about Defendants' activities in *North Carolina* fail to satisfy its burden of making a prima facie showing of specific jurisdiction.

For these reasons, Defendants' motion to dismiss for lack of personal jurisdiction regarding the North Carolina Timeshare Act claim is granted.[5] Accordingly, the Court now turns to Defendants' argument that Capital Resorts has failed to state a claim upon which relief can be granted as to the only remaining claim in this case—the SCUTPA claim against Wesley.

**SCUTPA Claim**

Defendants argue that Capital Vacations' claim for violations of the SCUTPA fails because it improperly seeks to bring representative claims for alleged injuries to third

---

[5] Because the Court concludes that it lacks jurisdiction over Defendants with respect to the North Carolina Timeshare Act claim, the Court declines to address the parties' remaining arguments regarding this claim, including Defendants' argument that Capital Vacations does not have standing to challenge the alleged procedural violations of the North Carolina Timeshare Act. *Cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999) (recognizing that there are situations where a district court does not abuse its discretion by addressing personal jurisdiction before subject matter jurisdiction); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 482 (4th Cir. 2005) (recognizing that "among jurisdictional issues there is no priority").

parties, fails to establish a causal connection between Wesley's alleged conduct and Capital Vacations' alleged injuries, and relates to conduct that is not unfair or deceptive. [Doc. 17 at 18–23.]

To plead a violation of the SCUTPA, a "plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006). "A plaintiff may show that unfair or deceptive acts or practices have an impact upon the public interest by demonstrating a potential for repetition." *Beaumont v. Walter Scotty Branch*, No. 2:23-cv-03546-DCN, 2023 WL 7075101, at *18 (D.S.C. Oct. 26, 2023). "The legislature intended in enacting the [SCUTPA] to control and eliminate the large scale use of unfair and deceptive trade practices within the state of South Carolina." *Noack Enters. v. Country Corner Interiors of Hilton Head Island, Inc.*, 351 S.E.2d 347, 349 (S.C. Ct. App. 1986) (internal quotation marks omitted). Even if a defendant's alleged conduct constitutes an unfair or deceptive practice, however, "[t]he SCUTPA is unavailable to redress private wrongs if the public interest is unaffected." *Ardis v. Cox*, 431 S.E.2d 267, 271 (S.C. Ct. App. 1993).

The Court concludes that, at this stage of the case, Capital Vacations has sufficiently pled a claim for violations of the SCUTPA. The Complaint alleges that Wesley's business model "violates traditional business norms" and that "Wesley has made a business of and monetized the tort of tortious interference with contract." [Doc. 1 ¶ 2.] Specifically, the Complaint alleges that, through its advertising and marketing, "Wesley makes false and misleading promises with a '100% money back guarantee' that

[it] can legitimately relieve timeshare owners of their obligations" and then collects exorbitant, up-front fees from timeshare owners under these false pretenses that Wesley can assist them in canceling their timeshares "legally." [*Id.* ¶¶ 2, 5, 12, 38, 39.] The Complaint alleges that Wesley's representations regarding its "legal strategy" are a "hoax," and that Wesley actually induces the timeshare owners to stop making payments, exposing the owners to delinquency, default, and adverse legal actions and harming Capital Vacations because it does not receive payment on the owners' obligations and incurs costs associated with recovering those payments. [*Id.* ¶¶ 16–18, 53, 61.] The Court concludes that these allegations are sufficient to allege that the unfair or deceptive acts affected the public interest. *See, e.g.*, *Goiser v. Harper*, 413 S.E.2d 845, 847 (S.C. Ct. App. 1991) ("We find an effect on the public interest can be inferred from the fact that this opportunity was offered to different members of the public."). The allegations are also sufficient to state a claim on behalf of Capital Vacations that its own injuries were proximately caused by Wesley's allegedly unfair and deceptive acts. *See Colleton Prep. Acad., Inc. v. Hoover Universal, Inc.*, 666 S.E.2d 247, 254–55 (2008) (concluding that there is not a general privity requirement for SCUTPA claims); *Wright*, 640 S.E.2d at 498; *Global Prot. Corp. v. Halbersberg*, 503 S.E.2d 483, 487–88 (S.C. Ct. App. 1998) (affirming a master's damages award under the SCUTPA and specifically affirming the master's finding that a defendant whose trade practice was deceptive to consumers caused the lost profits of the defendant's competitor and proximately caused the competitor to lose the benefits of other expenditures). Accordingly, the Court denies Defendants' motion to dismiss the SCUTPA claim for failure to state a claim as to Wesley.

21

## **CONCLUSION**

Wherefore, for these reasons, Plaintiff's motion for leave to conduct limited personal jurisdiction discovery and for extension of time [Doc. 25] is DENIED, and Defendants' motion to dismiss [Doc. 17] is GRANTED IN PART and DENIED IN PART. Defendants' motion to dismiss is denied as to Plaintiff's claim against Wesley for violations of the SCUTPA but otherwise granted. Additionally, Defendants' motion to stay the entry of a scheduling order and discovery [Doc. 30] is DENIED, and Plaintiff's motion for issuance of a scheduling order [Doc. 31] is DENIED. The Court will follow its normal course and enter a scheduling order after Wesley files its Answer.

IT IS SO ORDERED.

s/Jacquelyn D. Austin
United States District Judge

April 7, 2025
Florence, South Carolina